**No. 26-40187**

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

---

**ROBIN DENNIS PERRY SHIELDS, Individually and as**
**Next Friend of JOHN DOE1,**
*Plaintiff-Appellant,*

V.

**PORT ARTHUR INDEPENDENT SCHOOL DISTRICT;**
**MARK PORTERIE, Superintendent; MONIQUE BIENVENUE,**
*Defendants-Appellees.*

---

On Appeal from the United States District Court
for the Eastern District of Texas, Beaumont Division
No. 1:24-cv-00171-MAC
The Honorable Marcia A. Crone, United States District Judge

---

# BRIEF OF APPELLANT ROBIN SHIELDS

**Brandon P. Monk**
Texas Bar No. 24048668
THE MONK LAW FIRM
4875 Parker Dr.
Beaumont, Texas 77705
(409) 724-6665
brandon@themonklawfirm.com

**ORAL ARGUMENT REQUESTED**

**Attorney for Plaintiff-Appellant**

# CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made so that the judges of this Court may evaluate possible disqualification or recusal.

1. Robin Dennis Perry Shields, Plaintiff-Appellant, individually and as next friend of John Doe;
2. John Doe, the individual with disabilities on whose behalf this action is brought (proceeding under a pseudonym);
3. Port Arthur Independent School District, Defendant-Appellee;
4. Dr. Mark Porterie, Defendant-Appellee;
5. Monique Bienvenue, Defendant-Appellee;
6. Brandon P. Monk and The Monk Law Firm, counsel for Plaintiff-Appellant;
7. Melody Carrier and Carrier Law Group, P.C., counsel for Defendants-Appellees; and

*/s/ Brandon P. Monk*
Brandon P. Monk
Counsel of Record for Plaintiff-Appellant

# STATEMENT REGARDING ORAL ARGUMENT

Appellant respectfully requests oral argument under Fed. R. App. P. 34(a) and Fifth Circuit Rule 28.2.3. This appeal presents questions whose resolution would be aided by argument.

First, it presents an unresolved question in this Circuit: whether Title II of the Americans with Disabilities Act recognizes a hostile educational environment claim for disability-based harassment by school employees, a question the district court itself acknowledged was unsettled. ROA.408. Second, it presents the application of the corporal-punishment doctrine to facts this Court has not addressed: a special-education teacher's closed-fist strikes to the face of a non-verbal student with autism. Third, it implicates an acknowledged division among the circuits over whether the adequacy of state post-deprivation remedies forecloses substantive-due-process review of the use of force against students.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ..................................................... i

STATEMENT REGARDING ORAL ARGUMENT ............................................ ii

JURISDICTIONAL STATEMENT ......................................................................1

STATEMENT OF THE ISSUES........................................................................1

STATEMENT OF THE CASE..........................................................................2

STATEMENT OF FACTS ...............................................................................4

A. John Doe and His Disabilities.....................................................................4

B. The May 13, 129122 Fire-Drill Assault.......................................................5

C. Bienvenue's Pattern of Misconduct Against Special-Education Students.........6

D. PAISD's Response to the Reports and Bienvenue's Resignation ......................7

SUMMARY OF THE ARGUMENT ...................................................................9

STANDARD OF REVIEW ...............................................................................11

ARGUMENT ..................................................................................................12

I. The District Court Erred in Characterizing Bienvenue's Closed-Fist Strikes as Corporal Punishment ..........................................................................12

A. Bienvenue's Conduct Was Not Discipline Under the Intent Test ................12

B. Bienvenue's Conduct Was Not Punishment at All .......................................14

C. The Corporal-Punishment Framework Warrants En Banc Reconsideration15

D. Superintendent Porterie Is Subject to Supervisory Liability........................17

II. The District Court Erred in Dismissing the ADA Title II Claim....................18

A. The ADA Reaches a School District's Disability-Based Harassment of a Student ..........................................................................................18

B. The Complaint Adequately Alleged That the Discrimination Was By Reason of Doe's Disability ...........................................................................20

C. IDEA Exhaustion Does Not Bar the Claim ..................................................22

III. The District Court Abused Its Discretion in Denying Leave to Amend ........23

A. A Strong Presumption Favors Amendment..................................................23

B. The ADA Deficiency Was First Identified in the Dismissal Order.............23

C. The Court Did Not Apply Rule 16(b)'s Good-Cause Standard ...................24

IV. The First Amendment Claim Was Forfeited, Not Waived............................25

A. Forfeiture Is Not Waiver...............................................................................25

B. The Claim Has Merit and Should Be Remanded.........................................26

V. The Equal Protection Claim Should Be Remanded........................................27

CONCLUSION AND PRAYER FOR RELIEF .....................................................27

CERTIFICATE OF SERVICE ...............................................................................29

CERTIFICATE OF COMPLIANCE.......................................................................30

# TABLE OF AUTHORITIES

## Cases

*AAPS v. ABIM*, 103 F.4th 383 (5th Cir. 2024)........................................................23

*B. v. Jefferson Par. Sch. Bd.*, No. 22-30139 (5th Cir. May 30, 2023) (per curiam)22

*Banks v. Spence*, 114 F.4th 369 (5th Cir. 2024) ............................................. 11, 24

*Bennett-Nelson v. La. Bd. of Regents*, 431 F.3d 448 (5th Cir. 2005) ......................21

*Canutillo Indep. Sch. Dist. v. Leija*, 101 F.3d 393 (5th Cir. 1996) .........................20

*Castille v. Port Arthur Indep. Sch. Dist.*, No. 24-40644 (5th Cir. 2026) ........... 8, 26

*City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432 (1985)..............................27

*Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629 (1999) ....................................19

*DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189 (1989) ............17

*Doe v. Ferguson*, 128 F.4th 727 (5th Cir. 2025) ....................................................17

*Doe v. Rains Cnty. Indep. Sch. Dist.*, 66 F.3d 1402 (5th Cir. 1995) .......................18

*Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443 (5th Cir. 1994) .......................... 15, 17

*S&W Enters., L.L.C. v. SouthTrust Bank of Ala., N.A.*, 315 F.3d 533 (5th Cir. 2003) ..................................................................................................................24

*Essinger v. Liberty Mut. Fire Ins. Co.*, 534 F.3d 450 (5th Cir. 2008).....................25

*Est. of Lance v. Lewisville Indep. Sch. Dist.*, 743 F.3d 982 (5th Cir. 2014)............19

*Farshid v. Allen Indep. Sch. Dist.*, 688 F. Supp. 3d 391 (E.D. Tex. 2023)...... 16, 23

*Fee v. Herndon*, 900 F.2d 804 (5th Cir. 1990) .............................. 12, 13, 14, 15, 16

*Flores v. Sch. Bd. of DeSoto Par.*, 116 F. App'x 504 (5th Cir. 2004) .....................13

*Flowers v. S. Reg'l Physician Servs., Inc.*, 247 F.3d 229 (5th Cir. 2001) ........ 19, 20

*Ford v. Anderson Cnty.*, 102 F.4th 292 (5th Cir. 2024) .................................. 24, 25

*Fry v. Napoleon Cmty. Schs.*, 580 U.S. 154 (2017)......................................... 22, 23

*Garcetti v. Ceballos*, 547 U.S. 410 (2006) .............................................................26

*Harrison v. Klein Indep. Sch. Dist.*, 856 F. App'x 480...........................................20

*Ingraham v. Wright*, 430 U.S. 651 (1977)...............................................................14

*J.W. v. Paley*, 81 F.4th 440 (5th Cir. 2023) ...........................................................12

*Jefferson v. Ysleta Indep. Sch. Dist.*, 817 F.2d 303 (5th Cir. 1987) ................. 14, 15

*Leffall v. Dall. Indep. Sch. Dist.*, 28 F.3d 521 (5th Cir. 1994) ...............................17

*Moore v. Willis Indep. Sch. Dist.*, 233 F.3d 871 (5th Cir. 2000)............................14

*Neal v. Fulton Cnty. Bd. of Educ.*, 229 F.3d 1069 (11th Cir. 2000)........................16

*Pickett v. Tex. Tech Univ. Health Scis. Ctr.*, 37 F.4th 1013 (5th Cir. 2022)..........22

*Ricks v. Khan*, 135 F.4th 296 (5th Cir. 2025) .................................................. 11, 23

*Rollins v. Home Depot*, 8 F.4th 393 (5th Cir. 2021)........................................ 11, 25

*Soledad v. U.S. Dep't of Treasury*, 304 F.3d 500 (5th Cir. 2002) ..........................21

*Stewart v. Waco Indep. Sch. Dist.*, 711 F.3d 513 (5th Cir. 2013) ..........................22

*T.B. v. Nw. Indep. Sch. Dist.*, 980 F.3d 1047 (5th Cir. 2020).................................23

*T.O. v. Fort Bend Indep. Sch. Dist.*, 2 F.4th 407 (5th Cir. 2021) ..................... 13, 14

*United States v. Olano*, 507 U.S. 725 (1993) .........................................................25

*Woodard v. Los Fresnos Indep. Sch. Dist.*, 732 F.2d 1243 (5th Cir. 1984)...........15

**Statutes**

28 U.S.C. § 1291 ........................................................................................1

28 U.S.C. § 1331 ........................................................................................1

28 U.S.C. § 1343(a)(3) ..............................................................................1

42 U.S.C. § 1983 ........................................................................................2

Rehabilitation Act of 1973 § 504, 29 U.S.C. § 794 .................................20

**Rules**

Fed. R. App. P. 32 ....................................................................................30

Fed. R. App. P. 34(a) ................................................................................ ii

Fed. R. App. P. 4(a) ....................................................................................1

Fed. R. Civ. P. 12(b)(1) ...............................................................................3

Fed. R. Civ. P. 12(b)(6) ........................................................................ 3, 11

Fed. R. Civ. P. 15(a) ............................................................................ 11, 24

Fed. R. Civ. P. 16(b) ....................................................................................4

Fed. R. Civ. P. 16(b)(4) ...................................................................... 11, 24

Fed. R. Civ. P. 59(e) ................................................................................1, 4

**Constitutional Provisions**

U.S. CONST. amend. I ........................................................................... passim

U.S. CONST. amend. XIV.........................................................................14

## JURISDICTIONAL STATEMENT

The district court had subject-matter jurisdiction under 28 U.S.C. § 1331 because Appellant's claims arise under the Constitution and laws of the United States, and under 28 U.S.C. § 1343(a)(3) because they seek redress for the deprivation, under color of state law, of rights secured by the Constitution and federal law.

The district court entered a final judgment dismissing all claims with prejudice on September 11, 2025. ROA.413. Appellant timely moved to alter or amend the judgment under Fed. R. Civ. P. 59(e) on October 8, 2025, ROA.414, which the district court denied on March 18, 2026. ROA.437. Appellant filed her notice of appeal on April 1, 2026, within thirty days of the order disposing of the last timely post-judgment motion. ROA.453. This Court has appellate jurisdiction under 28 U.S.C. § 1291 , and the appeal is timely under Fed. R. App. P. 4(a)(4)(A).

## STATEMENT OF THE ISSUES

1. Whether the district court erred in characterizing a special-education teacher's closed-fist strikes to a non-verbal student with autism as corporal punishment that bars review of his substantive-due-process claim, where the teacher provoked the student's response, the conduct served no pedagogical purpose, and the complaint alleged a pattern of abuse directed at students with disabilities.

2. Whether the district court erred in dismissing the claim under Title II of the Americans with Disabilities Act for want of a pleaded disability nexus, where the Fifth Circuit has not resolved whether a hostile educational environment claim lies under the ADA for harassment by school employees, and the complaint alleged that the student's conduct was a manifestation of his disability.

3. Whether the district court abused its discretion in denying leave to amend the complaint.

4. Whether the district court erred in treating the First Amendment retaliation claim as waived rather than forfeited.

5. Whether the district court erred in dismissing the equal-protection claim.

## STATEMENT OF THE CASE

This is a civil-rights and disability-discrimination action arising from a special-education teacher's striking of a non-verbal student with autism during a school fire drill. Robin Dennis Perry Shields, individually and as next friend of John Doe, sued the Port Arthur Independent School District, Superintendent Mark Porterie, and teacher Monique Bienvenue. ROA.7; ROA.208. She asserted claims under 42 U.S.C. § 1983 for violations of substantive due process and equal protection, a claim under Title II of the Americans with Disabilities Act, a First

Amendment retaliation claim, and a Texas-law claim for intentional infliction of emotional distress. ROA.208.

Shields filed her original complaint on May 13, 2024, ROA.7, her first amended complaint on July 24, 2024, ROA.86, and the operative Second Amended Complaint on December 19, 2024, ROA.208. The Defendants moved to dismiss the Second Amended Complaint under Fed. R. Civ. P. 12(b)(1) and 12(b)(6). ROA.286. The motion was fully briefed through Shields's response, ROA.328, the Defendants' reply, ROA.358, and Shields's sur-reply, ROA.374.

On September 10, 2025, the district court granted the motion and dismissed every claim. ROA.390; ROA.412. The court held that the substantive-due-process claim was barred because it characterized Bienvenue's conduct as corporal punishment, for which Texas provides adequate post-deprivation remedies. ROA.397. It held that the ADA claim failed because the complaint did not plead that the abuse was by reason of Doe's disability, ROA.409, while acknowledging that it is "unclear whether the Fifth Circuit recognizes a hostile educational environment claim under the ADA premised upon student harassment by school employees." ROA.408. It held that the equal-protection claim was conclusory and identified no comparator, ROA.401, and that the First Amendment retaliation claim was abandoned because Shields did not address it in her response to the motion,

ROA.405. The court declined to exercise supplemental jurisdiction over the remaining state-law claim. ROA.412.

The district court then entered a separate final judgment dismissing the action with prejudice the next day, September 11, 2025. ROA.413. Shields timely moved to alter or amend the judgment under Fed. R. Civ. P. 59(e) and sought leave to file a third amended complaint. ROA.414. On March 18, 2026, the court denied the motion, declining to revisit its dismissal and denying leave to amend on the ground that Shields had not shown good cause under Fed. R. Civ. P. 16(b) to amend after the scheduling-order deadline had passed. ROA.437; ROA.448.

Shields timely filed her notice of appeal on April 1, 2026. ROA.453. This appeal presents the district court's dismissal of the federal claims and its denial of leave to amend.

## STATEMENT OF FACTS

### A. John Doe and His Disabilities

John Doe is a non-verbal young man with autism and sickle cell anemia. ROA.215. At the time of the events giving rise to this appeal, Doe was twenty years old and enrolled in the special-education program of the Port Arthur Independent School District at Memorial High School. ROA.216; ROA.282. His mother, Robin Dennis Perry Shields, brings this action individually and as Doe's next friend. ROA.208.

Doe’s sickle cell condition restricts his ability to withstand extremes of ambient temperature. Exposure to excessive heat or cold may trigger a sickle cell crisis. ROA.215. Monique Bienvenue and Michael Oliver were Doe's special-education teachers at Memorial High School, and Nurse Tammy Lake was among the staff responsible for the students during the events described below. ROA.216.

## B. The May 13, 2022 Fire-Drill Assault

On May 13, 2022, a fire drill was called at Memorial High School, and the students and staff evacuated to the area outside the building in the outdoor heat. ROA.215; ROA.216. Doe sought shelter from the heat in the shade of a wall. ROA.216. Bienvenue required Doe to leave the shade and to sit with his classmates on the curb in the heat. ROA.216.

Bienvenue then antagonized Doe and began shouting at him, causing him to become aggressive and to grab her. ROA.227. Bienvenue responded by striking Doe with a closed fist, pushing him down onto the curb, and striking him a second time. ROA.227; ROA.220. Security video captured the incident: it shows Bienvenue walking backward with a closed fist and striking Doe in the face, and reflects that the incident lasted approximately twenty-eight seconds. ROA.234. Multiple staff members, including Nurse Lake and Oliver, were present. ROA.234.

The incident was not reported to Shields. She learned of it from other parents on May 18, 2022, and immediately reported it to the Port Arthur Police Department.

ROA.220. On May 19, 2022, Shields met with school police Officers Shirley and Ibarra, informed them that Doe is non-verbal and autistic and had been assaulted by his teacher with a closed fist, identified when and where the incident occurred, and told them that cameras would have captured it. ROA.220.

## C. Bienvenue's Pattern of Misconduct Against Special-Education Students

The May 13, 2022 assault did not occur in isolation. Doe was physically injured on more than one occasion while under Bienvenue's supervision, including in the 2020-2021 and 2021-2022 school years. ROA.220. On one occasion, Doe returned from school limping, without explanation. ROA.227.

On a separate occasion, Bienvenue took Doe's telephone and concealed it. When Shields asked whether Bienvenue had something belonging to Doe, Bienvenue repeatedly denied it before producing the telephone from her own pocket. ROA.218; ROA.219. On another occasion, Bienvenue fabricated a story that Shields had been involved in an altercation with school police Officer Ibarra, and that account led the school to revoke Shields' longstanding privilege of dropping off and collecting Doe at the building's back door. ROA.218. Officer Ibarra denied any knowledge of the altercation and denied ever making the statement Bienvenue attributed to him. ROA.218.

When Shields asked Principal Glenn Mitchell about the fabricated account, which she had learned from special-education paraprofessional Jackie Coleman,

Mitchell stated, "The paraprofessional should not have told you." ROA.218. Coleman was fired. ROA.218.

Bienvenue's documented conduct toward special-education students extended to other students as well. On September 22, 2021, Bienvenue was captured on camera flipping over a table, nearly striking a student, taking the student's backpack, ripping his papers, and throwing the contents of the backpack onto the floor while the student cried. ROA.221; ROA.227.

The Texas Education Agency investigated the May 13, 2022 incident. In an investigative report dated September 1, 2022, the agency found that an incident had occurred but concluded that, under the education codes, the incident did not meet the technical definition of "restraint." ROA.234; ROA.236.

## D. PAISD's Response to the Reports and Bienvenue's Resignation

Shields had placed the District on notice of Bienvenue's conduct well before the fire-drill assault. On December 3, 2021, more than five months before the incident, Shields submitted a written Incident Report Form to the District concerning Bienvenue. ROA.220.

Dr. Jonathan Castille, an assistant principal at Memorial High School whose responsibilities included supervision of the school's special-education program, reported Bienvenue's misconduct in a detailed written complaint to Assistant Superintendent Dr. Melvin Getwood and requested disciplinary action against

Bienvenue. ROA.221; ROA.227; ROA.228. Castille attempted to keep his office in a location from which he could observe Bienvenue; Principal Melissa Oliva, a close friend of Bienvenue, forced Castille to move to a location from which he could not, and Castille was retaliated against for reporting. ROA.219; ROA.227.

Castille's employment was then terminated, and his separate claim arising from his reporting was litigated and dismissed in *Castille v. Port Arthur Independent School District*, No. 24-40644 (5th Cir. 2026).

PAISD took no corrective action against Bienvenue. The District did not turn the security video over to the Jefferson County District Attorney's Office. When Shields asked the District Attorney's investigator whether Bienvenue would be prosecuted, she was told that no video had been received from the District; school police Officer Shirley stated that the video had not been turned over because he understood that Shields had decided not to prosecute. ROA.217. Shields told Officer Shirley that she had not changed her mind and still wanted Bienvenue prosecuted for assaulting her son. ROA.217. Bienvenue was never prosecuted. ROA.217.

Rather than terminate Bienvenue, the PAISD Board of Trustees accepted her resignation. ROA.217; ROA.235.

## SUMMARY OF THE ARGUMENT

This appeal concerns whether a non-verbal, autistic young man may be denied a federal remedy for being struck in the face by his special-education teacher, on the theory that the blow was corporal punishment. It was not.

First, the district court erred in dismissing the substantive-due-process claim. Whether conduct is corporal punishment turns on the official's intent, and the closed-fist strikes on a student who had broken no rule, after the teacher provoked him, were a random, malicious, and unprovoked attack rather than discipline. The conduct was not punishment at all, and it differs in kind from every form of force this Court has upheld. The schoolchild's liberty interest in bodily integrity is hollow if it does not reach this conduct. The framework that forecloses the claim has left this Circuit isolated and rests on a state-remedy premise that failed here. And the supervisory-liability claim against Superintendent Porterie should not have been resolved against Appellant on the pleadings, because the bodily-integrity interest is conduct-neutral and the District had notice yet did nothing.

Second, the district court erred in dismissing the ADA Title II claim. This Court recognizes ADA disability-harassment claims and applies the deliberate-indifference framework to disability harassment in schools; recognizing a teacher-on-student hostile-educational-environment claim is the logical extension of that law, not a departure from it. The complaint alleged the disability nexus under Title

II's but-for standard, through the manifestation of Doe's disability and a documented pattern of an employee whose misconduct fell on disabled students. The exhaustion requirement of the Individuals with Disabilities Education Act does not apply, because the gravamen is violence, not the denial of a free appropriate public education.

Third, the district court abused its discretion in denying leave to amend. The strong presumption favors amendment, the ADA deficiency was first identified in the order of dismissal itself, and the court never applied the governing good-cause analysis.

Fourth, the First Amendment claim was forfeited, not waived; whether a parent reporting her child's abuse speaks as a citizen is a legal question the district court never reached, and the claim should be remanded for that standard to be applied to the pleaded facts.

Fifth, the equal protection claim should be remanded, because rational-basis review still requires a rational basis for striking a disabled student, and none existed here.

The judgment should be reversed and the case remanded for further proceedings.

## STANDARD OF REVIEW

This Court reviews de novo a district court's dismissal under Fed. R. Civ. P. 12(b)(6), accepting all well-pleaded facts as true and drawing all reasonable inferences in the plaintiff's favor. *Ricks v. Khan*, 135 F.4th 296 (5th Cir. 2025). Issues One, Two, and Five are reviewed under this standard.

This Court reviews the denial of leave to amend for abuse of discretion. *Banks v. Spence*, 114 F.4th 369 (5th Cir. 2024). When a party seeks leave to amend after the deadline set in a scheduling order has passed, the liberal amendment standard of Rule 15(a) is superseded by the good-cause requirement of Rule 16(b)(4), which is evaluated under four factors: the explanation for the failure to timely move, the importance of the amendment, potential prejudice in allowing the amendment, and the availability of a continuance to cure that prejudice. Issue Three is reviewed under this standard.

A party forfeits an argument by failing to raise it in the district court, and this Court may nonetheless reach a forfeited argument that presents a purely legal question where declining to do so would work a miscarriage of justice. *Rollins v. Home Depot*, 8 F.4th 393 (5th Cir. 2021). Issue Four presents whether the district court erred in treating Appellant's First Amendment claim as waived rather than forfeited.

# ARGUMENT

## I. The District Court Erred in Characterizing Bienvenue's Closed-Fist Strikes as Corporal Punishment

### A. Bienvenue's Conduct Was Not Discipline Under the Intent Test

The district court accepted the characterization of Bienvenue's closed-fist strikes as corporal punishment and dismissed the substantive-due-process claim under *Fee v. Herndon*, 900 F.2d 804 (5th Cir. 1990). That was error. Whether an act is corporal punishment is not a label a defendant may select after the fact; it turns on the actor's intent. As this Court explained in *J.W. v. Paley*, 81 F.4th 440 (5th Cir. 2023), "[f]airly characterizing an act as corporal punishment depends on whether the school official intended to discipline the student for the purpose of maintaining order and respect or to cause harm to the student for no legitimate pedagogical purpose." *Id.* at 453.

Measured by that intent test, Bienvenue's conduct was not discipline. Doe had committed no infraction. He was a non-verbal autistic student standing in the shade of a wall during a fire-drill evacuation. ROA.216. Bienvenue required him to rejoin the class, antagonized him, and provoked the predictable response of a non-verbal young man who communicates through behavior; when Doe grabbed her, she struck him with a closed fist, pushed him to the curb, and struck him a second time.

ROA.227. Surveillance video corroborates the account. ROA.234. No legitimate pedagogical purpose is served by punching a disabled student in the face.

This case is the mirror image of the conduct this Court has placed within the disciplinary frame. In *T.O. v. Fort Bend Indep. Sch. Dist., 2 F.4th 407 (5th Cir. 2021)* , the Court affirmed dismissal because the teacher used force only "after T.O. pushed and hit her," and held that "[e]ven if [the] intervention were ill-advised and her reaction inappropriate, we cannot say that it did not occur in a disciplinary context." *Id.* at 415. The Court was careful to note that the *Fee* framework yields when a student is "the subject of a 'random, malicious, and unprovoked attack.'" *Id.* Here the roles are reversed: Doe initiated nothing, broke no rule, and was struck by the teacher who provoked him. That is the random, malicious, and unprovoked attack *T.O.* describes.

Even the cases that have placed unpublished conduct within the disciplinary frame involved an actual infraction. In *Flores v. Sch. Bd. of DeSoto Par., 116 F. App'x 504 (5th Cir. 2004)* , the student was tardy. Doe committed no infraction at all. And the pedagogical-purpose inquiry cannot be answered in Bienvenue's favor on the pleadings, because the complaint alleges a pattern that negates any legitimate purpose: she hid Doe's phone, fabricated a story to revoke his accommodation, physically injured Doe on more than one occasion while he was under her supervision, ROA.220, and was recorded flipping a desk and throwing a student's

backpack. ROA.218; ROA.219; ROA.221; ROA.226-227. Conduct of this kind against special-education students is not discipline; it is the abuse the substantive-due-process guarantee reaches .

## B. Bienvenue's Conduct Was Not Punishment at All

Even accepting the corporal-punishment framework for argument's sake, it does not reach Bienvenue's conduct, because what she did was not punishment. In *Jefferson v. Ysleta Indep. Sch. Dist., 817 F.2d 303 (5th Cir. 1987)* , this Court held that a student tied to a chair "was not being punished, but was the subject of an instructional technique," so that the holding of *Ingraham v. Wright*, 430 U.S. 651 (1977), and its progeny were "inapposite." *Id.* at 305. The corollary controls here. If conduct outside the disciplinary frame falls outside *Ingraham*, then conduct that is not discipline at all, a closed-fist strike to the face of a student who broke no rule, falls outside the *Fee* framework that rests on it.

Bienvenue's strikes also differ in kind from every form of force this Court has upheld as corporal punishment. Those cases involved paddling (*Fee*, 900 F.2d 804), a physical restraint (*T.O.*, 2 F.4th 407), a taser deployed by a school officer (*Paley*, 81 F.4th 440), and supervised physical exercise (*Moore v. Willis Indep. Sch. Dist., 233 F.3d 871 (5th Cir. 2000)* ). Each occurred in a recognized disciplinary or pedagogical setting. A closed-fist blow to the face of a non-verbal student is not on that continuum. This argument asks the Court to apply *Fee*, not to revisit it: even on

the framework's own terms, conduct that is not punishment falls outside it, so the panel may reverse without awaiting en banc review.

The liberty interest at stake confirms the point. Sitting en banc, this Court held that "schoolchildren do have a liberty interest in their bodily integrity that is protected by the Due Process Clause of the Fourteenth Amendment." *Doe v. Taylor Indep. Sch. Dist., 15 F.3d 443, 445 (5th Cir. 1994)* (en banc). That interest is hollow if a special-education teacher may strike a disabled student with a closed fist and escape liability merely because the blow landed during a fire drill. That Doe was twenty years old does not narrow the interest: the doctrine turns on the school's custodial authority over the students in its charge, including those enrolled in its special-education program, not on a student's chronological age. ROA.216. And even if the strikes were punishment, punishment that is "arbitrary, capricious, or wholly unrelated" to any legitimate educational goal is not protected. *Jefferson*, 817 F.2d at 305 (citing *Woodard v. Los Fresnos Indep. Sch. Dist., 732 F.2d 1243 (5th Cir. 1984)* ). Striking a student who broke no rule is the paradigm of arbitrary force.

### C. <u>**The Corporal-Punishment Framework Warrants En Banc Reconsideration**</u>

If the *Fee* framework forecloses Doe's claim, Appellant preserves that it should be reconsidered by the en banc Court; this panel is bound by *Fee* under the rule of orderliness. This Court stands alone among the circuits in holding that

substantive due process is not implicated by injuries incidental to school corporal punishment so long as state tort remedies exist. As Judge Wiener observed in *Moore*, "I now perceive our isolation to be total." 233 F.3d at 877 (Wiener, J., specially concurring). A substantive-due-process violation, he explained, is complete when it occurs, which makes the availability of an after-the-fact state remedy beside the point. *Id.* The Eleventh Circuit reached the same conclusion and rejected this Court's approach, adopting a four-factor substantive-due-process test for excessive force in schools. *Neal v. Fulton Cnty. Bd. of Educ., 229 F.3d 1069 (11th Cir. 2000)* . District courts within this Circuit have acknowledged the same isolation. *Farshid v. Allen Indep. Sch. Dist., 688 F. Supp. 3d 391 (E.D. Tex. 2023)* .

This record illustrates the concern. The premise of the *Fee* rule is that an adequate state remedy stands behind the schoolhouse door. But the violation was complete when it occurred, and the post hoc availability of a tort remedy did not vindicate Doe's interest here: there was no prosecution, no professional discipline, and no termination; the District simply accepted Bienvenue's resignation. ROA.235. For a non-verbal, autistic young man with sickle cell anemia who was struck by a teacher with a documented pattern of abuse, the en banc Court should reconsider whether the mere availability of a tort suit forecloses constitutional relief.

**D. Superintendent Porterie Is Subject to Supervisory Liability**

The same bodily-integrity interest supports a supervisory-liability claim against Superintendent Porterie. This Court should be candid about the doctrinal posture: the en banc Court articulated its supervisory-liability framework in the context of sexual abuse, and no decision of this Court has yet applied it to non-sexual physical abuse. But the liberty interest the framework vindicates, bodily integrity, is conduct-neutral. *Doe v. Taylor*, 15 F.3d at 445. A closed-fist strike invades that interest as surely as any other physical abuse, and the deliberate-indifference logic does not turn on the character of the abuser's conduct. *Doe v. Ferguson*, 128 F.4th 727 (5th Cir. 2025), reaffirmed the three-part framework: a supervisor is liable where (1) he learned of facts or a pattern pointing plainly toward the constitutional violation; (2) he showed deliberate indifference by failing to take obviously necessary action; and (3) that failure caused the injury.

Two threshold points clear the path. *First, DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189 (1989) , does not shield the District, because Bienvenue's conduct was the State's own and not a private third party's. *Leffall v. Dall. Indep. Sch. Dist., 28 F.3d 521, 525 (5th Cir. 1994)* (the special-relationship doctrine applies to harms inflicted by third parties, not to a state actor's own conduct). Second, Porterie, as Superintendent, possessed the right of legal control

over Bienvenue that the non-supervisor defendant in *Doe v. Rains Cnty. Indep. Sch. Dist., 66 F.3d 1402 (5th Cir. 1995)* , lacked.

Each prong is pleaded. Knowledge: Assistant Principal Castille submitted a written complaint documenting Bienvenue's pattern of mistreating special-education students to Assistant Superintendent Getwood, ROA.221-225, and the Second Amended Complaint alleges, on information and belief, that Porterie was among the officials aware of information indicating Bienvenue's past acts. ROA.228; ROA.230. Deliberate indifference: the District took no investigative action, accepted Bienvenue's resignation rather than disciplining her, and the administrator who reported her was himself terminated. Causation: the documented pattern of physical mistreatment of disabled students made the closed-fist strikes on Doe a foreseeable consequence of that inaction, not a coincidence of timing. ROA.221; ROA.226-227. On these allegations the Court should not resolve the supervisory-liability question against Appellant on the pleadings; at a minimum, the claim warrants remand.

## II. <u>The District Court Erred in Dismissing the ADA Title II Claim</u>

### A. <u>The ADA Reaches a School District's Disability-Based Harassment of a Student</u>

The district court dismissed Doe's ADA claim on the disability-nexus element, having assumed that a hostile-educational-environment framework applies.

ROA.409. In doing so, the court conceded that the governing law is unsettled: "It is unclear whether the Fifth Circuit recognizes a hostile educational environment claim under the ADA premised upon student harassment by school employees." ROA.408. The court was correct to assume the framework, and this Court should now confirm it.

Two lines of authority converge on that conclusion. First, this Court has recognized an ADA hostile-environment cause of action for disability-based harassment, albeit in the employment (Title I) setting. *Flowers v. S. Reg'l Physician Servs., Inc.*, 247 F.3d 229 (5th Cir. 2001). Second, this Court has applied the deliberate-indifference framework of *Davis v. Monroe Cnty. Bd. of Educ., 526 U.S. 629 (1999)* , to disability-based harassment in the school setting. In *Est. of Lance v. Lewisville Indep. Sch. Dist., 743 F.3d 982 (5th Cir. 2014)* , the Court held that a district may be liable where it is "deliberately indifferent to . . . harassment, of which they have actual knowledge, that is so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school." *Id.* at 995 (quoting *Davis*, 526 U.S. at 650).

*Estate of Lance* involved harassment by the student's classmates. The case for liability is stronger here. If a district answers for deliberate indifference to disability-based harassment inflicted by a student's peers, over whom it has limited control, it answers even more so for disability-based harassment inflicted by its own employee,

over whom it exercises direct supervisory control. Recognizing a teacher-on-student hostile-educational-environment claim is the logical extension of *Flowers* and *Estate of Lance*, not a departure from them. The District had management-level notice of Bienvenue's conduct through Assistant Principal Castille's written report to Assistant Superintendent Getwood. ROA.221-225; ROA.228. *See Canutillo Indep. Sch. Dist. v. Leija, 101 F.3d 393 (5th Cir. 1996)* .

This Court has reserved the question. *See Harrison v. Klein Indep. Sch. Dist., 856 F. App'x 480, 487 n.6 (5th Cir. 2021)* (assuming without deciding that such a claim is viable); the district court's footnote 7 rested on that reservation. ROA.408. The Court may confirm the framework here, but it need not decide that question to reverse: the district court's own uncertainty about the governing law forecloses any conclusion that the claim could never be stated, and thus any conclusion that amendment would be futile.

**B. <u>The Complaint Adequately Alleged That the Discrimination Was because of Doe's Disability</u>**

The court dismissed for an inadequate disability nexus, ROA.409, but it measured the claim against the wrong standard. The claim is properly analyzed under Title II of the ADA, which does not require that disability be the sole cause. As this Court has explained, while Section 504 reaches discrimination "solely by reason of" disability, under Title II "discrimination need not be the sole reason for

the exclusion of or denial of benefits to the plaintiff." *Estate of Lance*, 743 F.3d at 990 (quoting *Bennett-Nelson v. La. Bd. of Regents, 431 F.3d 448, 454 (5th Cir. 2005)*, and *Soledad v. U.S. Dep't of Treasury*, 304 F.3d 500, 503-04 (5th Cir. 2002)). The complaint clears that but-for standard.

Doe's conduct was a manifestation of his disability. He is non-verbal and autistic; his grabbing of Bienvenue was the predictable behavioral response of a student who communicates through conduct rather than words, provoked by the adult responsible for his supervision. ROA.216; ROA.227. A teacher who knows a student is non-verbal and autistic, antagonizes him, and then treats the foreseeable response as a justification for force discriminates by reason of the very disability that produced the response. That a disabled student's disability-driven behavior cannot serve as the predicate for adverse treatment is the core of the manifestation principle that governs special-education discipline.

The nexus is reinforced by the pattern. The complaint's allegations support the inference, which the Court must draw in Appellant's favor at this stage, that Bienvenue's misconduct fell on disabled students: she hid Doe's phone, fabricated a story to strip his accommodation, physically injured Doe on more than one occasion, ROA.220, and was recorded flipping a desk and throwing a student's backpack. ROA.218; ROA.219; ROA.221; ROA.226-227. That her misconduct fell on disabled students supports the inference of a disability nexus. This case is

therefore unlike *B. v. Jefferson Parish School Board*, No. 22-30139 (5th Cir. May 30, 2023) (per curiam), where the physical discipline responded to the student's own violent conduct toward her teachers; here the complaint alleges a documented pattern of an employee whose misconduct fell on disabled students. And even where a disabled student's conduct precedes the use of force, *B. v. Jefferson Parish* addressed measured physical discipline, not closed-fist strikes to the face; conduct that is not discipline at all, see supra *Part I.B, Cannot Be Recharacterized as a Permissible Response to the Student's Behav. No Comparator Is Required at the Pleading Stage. Pickett v. Tex. Tech Univ. Health Scis. Ctr.*, 37 F.4th 1013 (5th Cir. 2022) .

### C. <u>IDEA Exhaustion Does Not Bar the Claim</u>

Nor does the exhaustion requirement of the Individuals with Disabilities Education Act bar suit. Under *Fry v. Napoleon Cmty. Schs., 580 U.S. 154 (2017)* , exhaustion turns on the gravamen of the complaint, that is, whether the plaintiff is in substance seeking relief for the denial of a free appropriate public education. The gravamen here is violence, not the denial of a free appropriate public education; Shields seeks compensatory damages for a physical assault, not educational accommodations. A claim that a teacher physically abused a disabled student is not a dispute about the adequacy of special education. The Fifth Circuit reached the same result before *Fry. See Stewart v. Waco Indep. Sch. Dist., 711 F.3d 513 (5th Cir.*

*2013)* . This Court and the district courts within it apply *Fry* to the same effect. *See T.B. v. Nw. Indep. Sch. Dist., 980 F.3d 1047 (5th Cir. 2020)* ; *Farshid v. Allen Indep. Sch. Dist., 688 F. Supp. 3d 391 (E.D. Tex. 2023)* . Exhaustion does not apply where the plaintiff seeks compensatory damages that are not available under the IDEA.

## III. The District Court Abused Its Discretion in Denying Leave to Amend

### A. A Strong Presumption Favors Amendment

If any claim was deficient as pleaded, the remedy was leave to amend, not dismissal with prejudice. This Court reviews the denial of leave for abuse of discretion, but that discretion is constrained: "it tends to be an abuse of discretion to flatly deny litigants the ability to amend their complaint, without exercising such discretion." *AAPS v. ABIM*, 103 F.4th 383, 393 (5th Cir. 2024). The Court has "a strong preference for explicit reasons in denying leave to amend." *Id.* and dismissing an action "after giving the plaintiff only one opportunity to state his case is ordinarily unjustified." *Ricks v. Khan*, 135 F.4th 296, 301 (5th Cir. 2025). The district court's own uncertainty about whether the hostile-educational-environment theory exists (Dkt. 36, fn. 7), ROA.408, forecloses any finding of futility: a court that is unsure of the governing law cannot be sure the claim cannot be stated.

### B. The ADA Deficiency Was First Identified in the Dismissal Order

The court denied leave on the ground that Shields had repeated opportunities to cure the same deficiency since the original complaint. That is inaccurate as to the

ADA claim. The original complaint was superseded by the First Amended Complaint and then by the Second Amended Complaint, ROA.208; the District first challenged the ADA claim in its second motion to dismiss; and the specific deficiency the court identified, an insufficient disability nexus, was first articulated in the dismissal order itself. ROA.409. A plaintiff cannot have repeatedly failed to cure a defect that was first named in the order of dismissal. A proposed amendment would plead the disability nexus with particularity, connecting the strikes to Doe's disability through Bienvenue's documented pattern of misconduct against special-education students and the manifestation of Doe's disability. Where a proposed amendment states a valid claim, this Court has vacated the denial of leave and remanded with instructions to grant it. *Ford v. Anderson Cnty.*, 102 F.4th 292 (5th Cir. 2024).

### C. <u>The Court Did Not Apply Rule 16(b)'s Good-Cause Standard</u>

The court cited the scheduling-order deadline but never applied the four-factor good-cause analysis that governs amendment after that deadline. When the deadline has passed, Rule 15(a)'s liberal standard yields to Rule 16(b)(4)'s good-cause requirement, which turns on the explanation for the delay, the importance of the amendment, any prejudice to the opposing party, and the availability of a continuance to cure that prejudice. *Banks v. Spence*, 114 F.4th 369 (5th Cir. 2024); *S&W Enters., L.L.C. v. SouthTrust Bank of Ala., N.A.*, 315 F.3d 533, 536 (5th Cir.

2003). The decisive factors favor amendment: the amendment is important because it may state a viable ADA claim about which the court itself was uncertain, and there is no prejudice, because the case had already been dismissed. At a minimum, this Court should remand with instructions to permit amendment of the ADA claim. *Ford*, 102 F.4th 292.

## IV. THE FIRST AMENDMENT CLAIM WAS FORFEITED, NOT WAIVED

### A. Forfeiture Is Not Waiver

The district court treated Shields's First Amendment claim as waived because she did not brief it in response to the motion to dismiss. That conflates two distinct concepts. "Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment or abandonment of a known right." *Rollins v. Home Depot*, 8 F.4th 393, 397 (5th Cir. 2021) (quoting *United States v. Olano*, 507 U.S. 725, 733 (1993)). Shields did not intentionally abandon the claim; she failed to brief it, which is forfeiture. Far from relinquishing it, she sought leave to replead her claims after dismissal, ROA.414, underscoring that the omission was an oversight, not an abandonment. And a forfeited issue may be reached where it presents "a purely legal matter and failure to consider the issue will result in a miscarriage of justice." *Id.* (quoting *Essinger v. Liberty Mut. Fire Ins. Co.*, 534 F.3d 450, 453 (5th Cir. 2008)). The threshold question, whether a parent who reports her

child's abuse speaks as a citizen rather than under official duties , is a purely legal one; its resolution in Shields's favor, together with the miscarriage of justice in leaving a parent without recourse for retaliation over that report, warrants reaching the forfeited claim and remanding it for application of that standard to the pleaded facts.

### B. The Claim Has Merit and Should Be Remanded

Under the correct standard, the question is whether Shields spoke as a citizen or under official duties. A parent reporting her child's abuse to the school speaks as a citizen on a matter of public concern, so *Garcetti v. Ceballos*, 547 U.S. 410 (2006), does not govern. The companion case is distinguishable: in *Castille v. Port Arthur Independent School District*, No. 24-40644 (5th Cir. Feb. 24, 2026), the speaker was a school administrator reporting misconduct as part of his job, and the dismissal rested on that public-employee posture under *Garcetti*; that holding does not reach a parent's citizen speech. Accepted as true, the facts already pleaded, including the District's pattern of retaliating against those who reported Bienvenue's conduct, suffice to state a retaliation claim under the correct standard. Because the district court never applied that standard, the proper course is to remand the claim to be briefed and decided in the first instance.

## V. THE EQUAL PROTECTION CLAIM SHOULD BE REMANDED

The district court dismissed the equal protection claim for failure to allege comparators or facts beyond conclusory assertions. Disability is not a suspect class, so the claim is reviewed for a rational basis. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432 (1985). Even under that deferential standard a rational basis must exist, and none is apparent for striking a non-verbal, autistic student in the face. If the  claim was instead deficient for want of comparator allegations, the remedy was leave to amend rather than dismissal with prejudice, for the reasons set out above. See *supra* Part III. In all events, if this Court reverses on the substantive-due-process or ADA claims, it should remand the equal protection claim for further proceedings alongside them.

## CONCLUSION AND PRAYER FOR RELIEF

For the reasons, Appellant Robin Dennis Perry Shields respectfully requests that this Court:

1. Reverse the district court's judgment dismissing her claims with prejudice;
2. Remand for further proceedings consistent with this Court's opinion;
3. In the alternative, vacate the district court's denial of leave to amend and remand with instructions to grant Appellant leave to file an amended complaint;
4. Award Appellant her costs on appeal; and

5. Grant any other relief to which Appellant is justly entitled.

Respectfully submitted,

**THE MONK LAW FIRM**

*/s/ Brandon P. Monk*
Brandon P. Monk
Texas Bar No. 24048668
4875 Parker Dr.
Beaumont, TX 77705
Telephone: (409) 724-6665
Facsimile: (409) 729-6665
Email:
brandon@themonklawfirm.com
ATTORNEY FOR PLAINTIFF-APPELLANT

## CERTIFICATE OF SERVICE

I certify that on June 8, 2026, I electronically filed the Brief of Appellant with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit using the CM/ECF system, which will serve a notice of electronic filing on the following counsel of record:

Melody Carrier
Carrier Law Group, P.C.
*Counsel for Defendants-Appellees*

*/s/ Brandon P. Monk*
Brandon P. Monk
Counsel for Plaintiff-Appellant

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) and Fifth Circuit Rule 32.1 because, excluding the parts of the brief exempted by Fed. R. App. P. 32(f), it contains 5,997 words.

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman.

*/s/ Brandon P. Monk*
Brandon P. Monk
Counsel for Plaintiff-Appellant